603 So.2d 192 (1992)
LAKESHORE HARBOR CONDOMINIUM DEVELOPMENT
v.
CITY OF NEW ORLEANS.
No. 90-CA-1691.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1992.
Rehearing Denied September 17, 1992.
*193 Michael J. Laughlin, Asst. City Atty., William D. Aaron, Jr., City Atty., Kathy Lee Torregano, Chief Deputy City Atty., New Orleans, for appellee.
Ted A. Price, David Charles Loeb, Chehardy, Sherman Ellis & Breslin, Metairie, for appellant.
Before BARRY, BYRNES and WARD, JJ.
BYRNES, Judge.
Plaintiff appeals the trial court's decision in favor of the City of New Orleans ("City"), upholding the zoning status of plaintiff's property. We affirm.
In 1980, plaintiff, Lakeshore Harbor Condominium Development ("Lakeshore"), a partnership, sought to develop a site on Lakeshore Drive and the New Basin Canal. In 1981, one of the partners acquired a property for $300,000, and all partners of Lakeshore acquired an ownership interest in the lease of the property. The partners acquired additional leases in the area for $1,500,000. The partnership renegotiated with the Board of Levee Commissioners for a $41,796 per annum rental for all leases for 56 years. In 1981 the property was zoned C-1 at the time of purchase.
On February 1, 1982 Lakeshore's architect applied for a building permit to construct condominiums on its property. On February 11 and March 1, 1982 the Department of the Army issued permits for Lakeshore to work in, and maintain a structure within, the navigable waters of Louisiana. On June 15, 1982 the City issued permits to begin construction which was substantially completed by July, 1983. On May 12, 1983 the City enacted Ordinance # 9169 which rezoned Lakeshore's property from its original C-1 general commercial district status to B-2 neighborhood business district status. In August, 1983 the Use and Occupancy permits were issued. At this time, Lakeshore realized that the condominium development would economically fail, but considered the property's other uses. Plaintiff's lender, First Financial Bank, commissioned a study by Dr. Wade Ragas to determine alternative economically feasible uses for the property. During his study, Dr. Ragas became aware of the rezoning by the City and its consequences upon the property's uses. The property did not have the originally planned water uses, nor could it utilize its previous options. Under the original C-1 zoning status, Dr. Ragas determined that the property could be best utilized as a hotel.
In mid-1984 Lakeshore contacted its district councilman, Mr. Wagner, concerning the rezoning of its property to C-1. Mr. Wagner deferred the decision of rezoning to the neighborhood property owners association. On September 17, 1984 Lakeshore applied for a permit to convert its condominium project into a hotel project. Lakeshore was servicing a $90,000 per month payment to their lender for this project. On September 24, 1984 the permit was denied due to the B-2 zoning status of the property. In October, 1984 Lakeshore filed suit in civil district court in response to that denial. In November, 1984 Lakeshore entered into a dation en paiement including the payment of $1,000,000 with First Financial Bank. After a bench trial, the district court ruled in favor of the City and *194 dismissed Lakeshore's suit on May 30, 1990. Lakeshore appeals the trial court's judgment.

Assignments of Error
On appeal Lakeshore contends that the trial court erred in finding that: the City gave the required legal notice to re-zone; the zoning change was not arbitrary and capricious; and the rezoning of the area did not constitute a governmental taking from which Lakeshore could demand just compensation. Along with its appellate brief, the City filed peremptory exceptions of prescription, no right of action and no cause of action. We deny these exceptions.
Lakeshore contends that the trial court erred in finding that the City gave adequate legal notice as required. L.S.A.-R.S. 33:4724 states in pertinent part:
[I]n such case notice of the time and place of the hearing shall be published once a week in three different weeks in the official journal of the municipality or, if there be none, in a paper in general circulation therein; at least fifteen days shall elapse between the first publication and the date of the hearing.
Additionally, the New Orleans Comprehensive Zoning Ordinance, Article 15, Section 2.9 requires that the City must post notices in each block of the affected area. The City testified that it supplemented the above requirements by customarily mailing notices to the property owners in the affected area. Lakeshore asserts that the City did not advertise the hearing on the zoning change in the Times-Picayune, a paper of general circulation, based on the testimony that the Lakeshore partners did not see such a notice. Lakeshore argues that the City did not post notices in the affected blocks based on the testimony that the partners did not observe such notices while on their property site. Finally, Lakeshore complains that the City did not mail the customary notices as none of the partners received a notification.
The Executive Director of the Planning Commission testified that the City met the above notice requirements, based upon his examination of the case records. Also, the City points out that the Levee Board, as owner of the property, would have received the mailed notice, not the lessee. However, the Director did not have those records at trial although he stated to the trial judge that he would be capable of producing them from the Commission's archives. Lakeshore argues that those records would offer the best evidence to this fact issue; however, Lakeshore had the burden to seek production of the records to support its case. The trial court concluded that the City met the notice requirements based upon the testimony of the City. Because Lakeshore did not object to the director's hearsay testimony during trial, the objection is deemed waived. Absent manifest error, the appellate court will not overturn the factual determinations of the trial court. Rosell v. ESCO, 549 So.2d 840 (La.1989). The record provides a reasonable basis for the trial court's conclusion that the City complied with the notice requirements.
In its second assignment of error, Lakeshore contends that the trial court erred in finding that the rezoning of the affected area was not arbitrary and capricious. In its reasons for judgment the trial court stated:
The proper remedy to have been pursued by plaintiffs should have been an appeal from the zoning change from C-1 to B-1, or an appeal from the denial of the application to convert the condominium to a hotel.
However, Lakeshore ignored the normal procedures and instead attacked the constitutionality of the zoning change. Thus, Lakeshore bears the burden of showing that the zoning change lacked a substantial relation to the welfare of the City, that is, the enacted ordinance was an arbitrary or capricious exercise of governmental authority. Palermo Land Co., Inc. v. Planning Comm'n of Calcasieu Parish, 561 So.2d 482 (La.1990); Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659 (La.1974). The Louisiana Supreme Court stated in Palermo that:
"A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the *195 legislation is arbitrary or capricious, and therefore a taking of property without due process of law." Id. at 492.
The Court noted that the presumption of the validity of legislation applies to zoning ordinances. In applying the "manifest error" standard in Palermo, the Supreme Court found that the courts will only ensure that there is no abuse of power and will not substitute their judgment for that of the legislative body. Id. at 491.
In 1981, the City commissioned a study of the Lakefront marina area, which encompasses Lakeshore's leased property. The City Planning Commission ("C.P.C.") recommended that the entire area be rezoned from its classification of C-1, which it had held for thirty years, to B-2, based on the factors of building height, traffic impact, and the nature and character of the land use. The City Council enacted only part of the recommendation, rezoning the center of the area to B-2 but leaving the perimeters unchanged. In 1983, the City Council rezoned Lakeshore's leased property pursuant to Ordinance No. 9169, M.C.S.
The rezoning by the City can be rationalized based on the C.P.C. study of 1981. However, Lakeshore argues that the study was based on faulty methods of analysis. Lakeshore asserts that the traffic study was incorrectly performed. As proof of their assertion, Lakeshore cites the City's failure to produce records on the study. Lakeshore has the burden to show the fallibility of the report. The City did not have a duty to produce records on its own volition.
Lakeshore argues that it produced expert witnesses to contradict the study of the City Planning Commission, and that both parties agreed that the area's character is disposed toward marina usage. However, the City Council is able to alter the zoning status of an area as it perceives the changing needs of that area. Lakeshore suggests that the perception of the changing needs of the area was based on political motivations, and that this should bear favorably upon their claim. Lakeshore presents Councilman Wagner's statement that he would have approved Lakeshore's requested zoning change if the neighborhood association approved Lakeshore's proposal. Contrary to Lakeshore's contention, the opinion of the neighborhood associations and the other residents of the area must be given weight for determining the nature and character of the area. A City Councilperson is ultimately responsible to his electorate and should seek their opinions on zoning changes. The neighborhood's position supported the change suggested by the 1981 study.
Lakeshore failed to show the study was faulty. The study combined with the neighborhood approval provides a reasonable basis for the City Council to alter the zoning status of the property. Thus Lakeshore failed to show that the zoning change was arbitrary and capricious.
In its third assignment of error Lakeshore contends that the trial court erred in finding that the rezoning of the area did not constitute a governmental taking from which Lakeshore could demand just compensation.
Article 1, Section 4 of the Louisiana Constitution provides:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.
What constitutes a "taking" is a factual issue based on whether the government's action destroys a major portion of the property's value. Annison v. Hoover, 517 So.2d 420 (La.App. 1st Cir.1987), writ den., 519 So.2d 148 (La.1988). A taking is accomplished when the government's action eliminates the practical economic uses of a property. Robertson v. Parish of Jefferson, 465 So.2d 787 (La.App. 5th Cir.1985); Hernandez v. City of Lafayette, 643 F.2d 1188 (5th Cir.1981), cert. den., 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).
*196 Lakeshore originated its investment with the intent to build condominiums. Lakeshore never lost the right to build condominiums. Due to the New Orleans recession and the failing of the condominium market, Lakeshore wanted to recoup its losses by developing a hotel on the property. However, the zoning change eliminated this option as well as other options. The partners' $10,000,000 investment failed, and some partners became bankrupt. The timing of Lakeshore's attempt to gain a hotel license is the important factor here. The City had issued Lakeshore the condominium licensing and did not "take" this use away, as the area still maintains its condominium usage. Lakeshore did not attempt to have the City issue them a hotel license prior to the zoning change, and it was not until a year and a half after the zoning change that Lakeshore sought such licensing. Lakeshore was not deprived of a exercised right in their property, but was denied a use of their property. That denial is reasonable under the authority of the government's zoning power. The City did not destroy a major portion of the property's value nor was Lakeshore denied practical economic uses for the property under the B-2 zoning. While a hotel could have been the "most" viable investment for that property at the time of Dr. Ragas' study, mere deprivation of that use due to a long past zoning change does not constitute a governmental taking. Robertson v. Parish of Jefferson, supra. Thus the zoning change did not constitute a taking for which compensation is due.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.