633 So.2d 608 (1993)
Harry R. LAYNE, Anthony P. Abraham, Lakefront North Properties, Inc., and Anthony P. Abraham, Inc.[1]
v.
The CITY OF MANDEVILLE, Adelaide J. Boettner, James J. Gleason, III, Emile Navarre, Edward J. Price, III, Kenneth V. Sollberger, Lynn R. Mitchell, Mertis A. Fulton, Lawrence J. Justrabo, John Paul Landry, Nils W. Lindbloom and Edward S. Ryan[2].
No. 93 CA 0046.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
Writ Denied March 25, 1994.
*609 Garic K. Barranger, Covington, for plaintiff-appellant.
M. Nan Alessandra, New Orleans, for defendant-appellee.
Delbert G. Talley, Harvey, William E. Decker, Mandeville, for defendants.
Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
In 1965[3], Harry C. Layne and Lakefront North Properties, Inc. (plaintiffs) purchased property located on Lake Pontchartrain in Mandeville, Louisiana, which is the subject of this dispute. At the time of purchase, the property was zoned B-2, which permitted various business-related usages. Initially, plaintiffs used the property as a personal office.
Early in 1981, plaintiffs began exploring the possibility of a joint project constructing a hotel or condominium building on the property. In 1983, plaintiffs agreed to sell the property to Anthony Abraham and Anthony P. Abraham, Inc., for $1.5 million, upon the fulfillment of certain conditions, which included obtaining various permits from the city. Plaintiffs subsequently faced opposition by Mandeville residents who lived near the proposed project. After public hearings, the property was rezoned to single-family residential. Plaintiffs contend the rezoning was a "taking" because they have been denied *610 business use of the property.[4] The trial judge granted summary judgment and dismissed plaintiffs' claim. On appeal, plaintiffs contend the trial court misinterpreted two United States Supreme Court decisions as applied to this case and to the law of Louisiana. Plaintiffs also contend summary judgment is improper because there is a dispute over whether the zoning change was for the public welfare or for the protection of "the powerful few."

I. What Law Applies
Plaintiffs contend the doctrine of Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), dictates that the substantive laws of states must govern, even in a situation where federal constitutional precepts are at issue. They argue further that Louisiana case law and property concepts should override federal "takings" jurisprudence.[5]
The Erie doctrine is a federal law rule which requires federal courts sitting in diversity to apply the substantive law of the states in which they are sitting. Erie has no application in an action in state court. Moreover, because of the supremacy clause, all state law is subordinate to and may not detract from federal constitutional rights. U.S. Const. art. VI, cl. 2. Thus, we cannot agree with plaintiffs' suggestion that we are not bound by federal constitutional law in this case.
The Constitution of the United States provides that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.
The Supreme Court stated in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Based on the United States Supreme Court ruling in First English Evangelical Lutheran Church v. County of Los Angeles, California, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), this court has previously held that a governmental taking may occur in the form of zoning or rezoning. Annison v. Hoover, 517 So.2d 420 (La.App. 1st Cir.1987), writ denied, 519 So.2d 148 (La.1988).
Whether a rezoning constitutes a governmental "taking" is a factual inquiry. The Supreme Court recently reiterated that in 70 years of "regulatory takings" jurisprudence since Mahon,
we have generally eschewed any "`set formula' " for determining how far is too far, preferring to "engag[e] in ... essentially ad hoc, factual inquiries."
Lucas v. South Carolina Coastal Council, ___ U.S. ___, ___, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992), citing Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124-25, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978), quoting Goldblatt v. Hempstead, 369 U.S. 590, 594-95, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962).

II. Lucas and Summary Judgment
The trial judge granted summary judgment based on Lucas because plaintiffs were afforded due process and were not denied all economic value of their property. The trial judge stated:
[W]ere I to take [Lucas] and rule the other way, it would seem I would be basically stating that any time there's a rezoning and there's a different use which limits the use or it is not a total taking, I would then be having to compensate an owner.
*611 The trial judge erred by interpreting Lucas as stating a rule that a taking occurs only when an owner is deprived of all economically beneficial use of his land. Lucas describes "at least two discrete categories of regulatory action as compensable without a case-specific inquiry into the public interest advanced in support of the restraint." Lucas, ___ U.S. at ___, 112 S.Ct. at 2893. First are regulations that compel the property owner to suffer a physical "invasion" of his property, and second are regulations which deny an owner all economically beneficial or productive use of land. Id. Thus, the Court in Lucas states a rule that an owner deprived of all economically beneficial use is categorically entitled to compensation.
However, the Court also states that an owner not deprived of all use simply does not benefit from the categorical analysis and must undergo a fact-specific determination.[6]
Here, plaintiffs have been denied business use of their property, but Layne admits in his deposition he did not explore potential uses under residential zoning. He admits they possibly could have "broken even" by subdividing the property and selling it as residential lots. Nevertheless, this is a factual inquiry which goes to the weight of evidence on the issue of whether there was a taking, and, if so, what compensation may be due. The rule of Lucas has no application in this case.
The Louisiana Constitution goes beyond the federal constitution by compensating an owner for "the full extent of his loss," rather than only "just compensation."
Louisiana Constitution, article 1, section 4, provides, in pertinent part:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise.
In Annison v. Hoover, 517 So.2d 420, 423 (La.App. 1st Cir.1987), writ denied, 519 So.2d 148 (La.1988), we stated: "A taking has occurred if there has been a substantial diminution in value to such an extent that there has been a destruction of a major portion of the property's value."
To compensate an owner for the "full extent of his loss," Louisiana courts have awarded compensation for business-related losses. Packard's Western Store, Inc. v. State, 618 So.2d 1166 (La.App. 2d Cir.1993); State v. Exxon, 430 So.2d 1191 (La.App. 1st Cir.), writs denied, 437 So.2d 1155, 1156 (La. 1983). Compensation for such losses is based on the principle from State v. Constant, 369 So.2d 699 (La.1979), that an owner must be placed in as good a position pecuniarily as he would have been had his property not been taken. Id. at 701; State v. Ford, 520 So.2d 774, 777 (La.App. 3d Cir.1987), writ denied, 522 So.2d 564 (La.1988). The Louisiana Supreme Court extended the *612 award of business losses to include not only present losses, but also estimated future business losses. State v. Dietrich, 555 So.2d 1355 (La.1990); Naquin v. Dep't of Transp. and Dev., 604 So.2d 62 (La.App. 1st Cir.), writ denied, 608 So.2d 169 (La.1992). The right to use property for business pursuits in hope of generating a profit is clearly a right which flows from property ownership. Exxon, 430 So.2d at 1195.
Whether a "taking" has occurred must first be considered before the question of compensation. The determination of whether the rezoning was a "taking" is a factual issue based on whether the government's action destroyed a major portion of the property's value or eliminated the practical economic uses of the property. Lakeshore Harbor Condominium Dev. v. City of New Orleans, 603 So.2d 192 (La.App. 4th Cir.1992). The determination of what amount will compensate a landowner to the full extent of his loss is based on the facts of each case and in accord with the uniqueness of the thing taken. Naquin, 604 So.2d at 65-66; Southern Natural Gas Co. v. Poland, 406 So.2d 657, 663 (La.App. 2d Cir.1981), writ denied, 412 So.2d 86, cert. denied, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).

III. Conclusion
The sole purpose of the motion for summary judgment is to determine in advance of trial whether a genuine issue of material fact exists between the litigants. Industrial Sand and Abrasives, Inc. v. Louisville & Nashville R.R. Co., 427 So.2d 1152 (La.1983); Leonard v. Stephens, 588 So.2d 1300 (La.App. 2d Cir.1991). The party moving for summary judgment must clearly prove the absence of a genuine issue of material fact. Any doubt is resolved against summary judgment and in favor of a trial on the merits. Medine v. Johnson, 600 So.2d 1373 (La.App. 1st Cir.1992); Roger v. Dufrene, 553 So.2d 1106, 1108 (La.App. 4th Cir.1989), writ denied, 559 So.2d 1358 (La.1990). Summary judgment cannot be granted once the judge detects the existence of a disputed material fact. This case reveals many disputed factual issues which preclude summary judgment, particularly, but not exclusively, whether there was a taking and whether compensation may be due.
The trial judge erred by interpreting Lucas v. South Carolina Coastal Council, ___ U.S. ___, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) as stating a rule which only allows a "taking" to occur when an owner is denied all economically beneficial use of his property. The trial judge also erred in granting defendants' motion for summary judgment. The judgment of the trial court dismissing plaintiffs' claims is reversed, and this case is remanded for further proceedings. Costs of this appeal are assessed to the defendant.
REVERSED AND REMANDED.
NOTES
[1] Anthony P. Abraham and Anthony P. Abraham, Inc., voluntarily dismissed their claims.
[2] The motion for summary judgment was filed on behalf of the City of Mandeville. By consent judgment, plaintiffs' counsel and counsel for the individual defendants jointly stipulated on October 29, 1992, that the judgment signed September 23, 1992, applied to the individual aldermen named as defendants, as well as the City of Mandeville. Plaintiffs appealed the September 23, 1992, judgment and the October 29, 1992, judgment. The trial judge consolidated the appeals November 13, 1992.
[3] Plaintiff's appellate brief states the property was purchased in 1965; however, plaintiff's opposition memorandum to defendant's motion for summary judgment states defendant purchased the property in 1978. The date of purchase is irrelevant to this discussion. The parties do not dispute the property was zoned B-2 in 1983 when plaintiff's problems began.
[4] This property had a base value of $528,000.00, composed of the $278,000.00 purchase price and $250,000.00 in improvements to the land. Between the time of the trial court's disposition on summary judgment and this appeal, plaintiffs sold the property for $375,000.00. Thus, they claim to have suffered a loss of $153,000.00, not including the loss of profits "which [Layne] might have reaped...."
[5] Plaintiff suggests that federal constitutional precepts on "takings" are based on feudal concepts of ownership, rather than civil law concepts of ownership. The difference, he argues, is that under feudal concepts, property is held on license from the sovereign which is therefore incomplete ownership. In Louisiana, he argues, Napoleon did away with this concept and "if you own it, you own it."
[6] Lucas v. South Carolina Coastal Council, ___ U.S. ___, ___, n. 8, 112 S.Ct. 2886, 2895, n. 8, 120 L.Ed.2d 798 (1992). The Court states:

Justice STEVENS criticizes the "deprivation of all economically beneficial use" rule as "wholly arbitrary," ... This analysis errs in its assumption that the landowner whose deprivation is one step short of complete is not entitled to compensation. Such an owner might not be able to claim the benefit of our categorical formulation, but, as we have acknowledged time and again, "[t]he economic impact of the regulation on the claimant and ... the extent to which the regulation has interfered with distinct investment-backed expectations" are keenly relevant to takings analysis generally.
(Citations omitted.)