Dear Representative White,
You have requested an opinion of this Office regarding whether compensation must be paid by the government to a landowner when an amendment to a city ordinance ultimately results in a regulatory taking of private property. A regulatory taking is one that occurs when governmental regulations compel a property owner to suffer a physical invasion of property or denies the owner of all economically beneficial or productive use of his land.[1] A regulatory taking may also occur "if there has been a substantial diminution in value to such an extent that there has been a destruction of a major portion of the property's value."[2]
 FACTS
Your request specifically deals with property located within the city limits of the City of Zachary ("Property"). You state that the Property was purchased in 2001 and has already been partially developed by the owner for residential use.[3] After this *Page 2 
development occurred, the City of Zachary enacted Ordinance 2008-07, which amended Section 46-59 of the City of Zachary's Code of Ordinances. This ordinance adopted and incorporated the Federal Emergency Management Agency ("FEMA") Flood Insurance Study for East Baton Rouge and Incorporated Areas, dated May 2, 2008. The adoption of this ordinance had the effect of placing the undeveloped portion of the Property in a "floodway." As a result of his property being labeled as being in a "floodway," the owner of the Property must now show that any construction in the floodway will not result in any increase in flood levels before such construction can occur.
 THE NATIONAL FLOOD INSURANCE PROGRAM
Introduction
"The National Flood Insurance Act of 1968 was enacted by Title XIII of the Housing and Urban Development Act of 1968 to provide previously unavailable flood insurance protection to property owners in flood-prone areas."[4] The National Flood Insurance Program ("NFIP"), an integral portion of this legislation, requires that communities in the program "review all permit applications to determine whether proposed building sites will be reasonably safe from flooding."[5] The NFIP is administered by FEMA, a unit of the Department of Homeland Security ("DHS").
In addition, the federal flood program regulations specifically provide the foundation for states and communities, in the program, to adopt and enforce voluntary standards that "exceed the minimum criteria . . . by adopting more comprehensive floodplain management regulations."[6] These regulations also provide that "any floodplain management regulations adopted by a state or a community which are more restrictive than the criteria set forth in [the NFIP] are encouraged and shall take precedence."[7]
Adoption of NFIP by Louisiana and its Political Subdivisions
Community participation in the NFIP is "voluntary," but identified flood-prone communities choosing not to participate in NFIP are disqualified from receiving federal flood insurance and financial assistance to mitigate flood damages.[8] The term *Page 3 
"community," for NFIP purposes, includes individual states as well as their political subdivisions.[9] Louisiana has statutorily allowed all of its parishes and municipalities to adopt any ordinances, rules, and/or regulations necessary to secure flood insurance for the citizens of the State through La.R.S. 38:84. It has also made the NFIP mandatory for all parishes and municipalities with projects which involve or receive federal assistance.[10] La.R.S. 38:84 states as follows:
A. In order to secure for the citizens of the state of Louisiana the flood insurance coverage provided for by the National Flood Insurance Act of 1968, 42 USC 4001 et seq., all of the parishes and municipalities of the state may adopt such ordinances, rules, and regulations, including zoning and land use regulations, as are necessary to comply with the requirements of said Act and the regulations adopted pursuant thereto by the Federal Emergency Management Agency.
B. The office of public works, hurricane flood protection, and intermodal transportation shall cooperate with the Federal Insurance Administrator of the Federal Emergency Management Agency in the planning and carrying out of state participation in the National Flood Insurance Program and shall aid, advise, and cooperate with parishes and municipalities endeavoring to qualify for participation in said program.
C. Before construction of any project for local flood protection, or any project for hurricane or storm damage reduction which involves federal assistance from the Secretary of the United States Army, the local parish or municipality shall agree to participate in and comply with all applicable federal flood plain management and flood insurance programs, as required by 33 U.S.C. 701b-12.[11]
D. Each parish and each municipality shall agree to participate in and comply with all applicable provisions of the federal flood plain management and flood insurance programs, as required by 33 U.S.C. 701b-12, *Page 4 
before construction of any project for local flood protection or any project for hurricane or storm damage reduction which involves or receives federal assistance.
The NFIP, while labeled as a "voluntary" program, is the only way municipalities can obtain federal assistance in dealing with flood and hurricane damages. Participation in the NFIP enables smaller communities, like the City of Zachary, to provide assistance to its constituency in times of need, but also subjects these communities to laws and regulations created by the federal government and FEMA.
The City of Zachary has enacted Chapter 46 in its Code of Ordinances which adopts the NFIP through a direct reference to La.R.S. 38:84.[12] Therefore, the City of Zachary participates in the program and is eligible for federal assistance with any local flood protection, hurricane, or storm damage reduction projects.
Floodways and Flood Insurance Rate Maps ("FIRMs")
FEMA provides maps that determine the regulations and rates for flood insurance under the NFIP. These maps delineate flood plains in a given area and places all areas susceptible to flooding into flood zones. The zones determine the risk and likelihood of flooding in a given area, which provides the groundwork for establishing flood insurance rates. In addition to these FIRMs, FEMA also provides maps outlining other regulated or restricted areas such as floodways.
A regulatory floodway is defined as a channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge the base flood without cumulatively increasing the water surface elevation more than a designated height.[13]
The property in question was not originally included in a "floodway," when purchased and sub-divided by the developer. However, pursuant to the adoption of recent revisions of FEMA flood maps, the land in question is now located in a floodway and the owner bears the burden of proving that any construction conducted thereon will not increase flooding in the area.[14] This requirement indisputably carries a nearly impossible burden of proof to which any landowner will have trouble satisfying.
With regard to when the these FIRMs apply, the Code of Federal Regulations state that "[t]he Federal Insurance Administrator will provide the data upon which flood plain *Page 5 
management regulations shall be based."[15] These regulations further state that "when special flood area designations and water surface elevations have been furnished by the Federal Insurance Administrator, they shall apply."[16] Therefore, since the City of Zachary participates in the NFIP, the special flood area designations and water surface elevations applied the moment they were released by FEMA. These particular maps were effective on May 2, 2008.[17] The City of Zachary, on March 11, 2008, also adopted Ordinance 2008-07, which states:
[t]he areas of special flood hazard identified by the Federal Emergency Management Agency in the current scientific and engineering report entitled, "The Flood Insurance Study (FIS) for East Baton Rouge Parish and Incorporated Areas," dated May 2, 2008, with accompanying Flood Insurance Rate Maps for East Baton Rouge Parish and Incorporated Areas dated May 2, 2008 and any revisions thereto are hereby adopted by reference and declared to be a part of this chapter.[18]
As a result of this immediate decrease in the usefulness or value of the Property, caused by the effects of the map revisions referenced herein, we must next consider whether or not a taking, in the constitutional sense, has occurred.
 TAKINGS ISSUE
The United States Constitution states that no private property shall be taken for public use, without just compensation.[19] Similarly, the Louisiana Constitution states "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit."[20] The term "public purpose" in this provision expressly includes the removal of a threat to public health or safety caused by the existing use or disuse of the property and/or any purpose relating to drainage, flood control, levees, coastal and navigational protection *Page 6 
and reclamation for the benefit of the public generally.[21] While the right to just compensation exists for such takings, all property remains subject to reasonable statutory restrictions and the reasonable exercise of the police power.[22]
In this opinion, the tract at issue was rendered partially useless when the property was placed in a "floodway." Being designated as a floodway means that the owner of the Property bears the burden of proof in showing that any construction conducted on the property will not increase flooding in the area. This burden of proof is nearly impossible, and its existence automatically reduces the value of the Property. The primary issue involved here is whether or not this particular reduction of property value amounts to a "regulatory taking," which requires the payment of just compensation under both the United States and Louisiana Constitutions.[23]
The United States Supreme Court ruled on an issue very similar to this one in Lucas v. South Carolina Coastal Council.[24] InLucas, the owner of beachfront property brought an action alleging that the application of South Carolina Beachfront Management Act to his property constituted a taking without just compensation. Lucas, the petitioner, had purchased two residential lots on a South Carolina barrier island, intending to construct residential housing on these parcels. At the time of purchase, such a use of the property was permissible. Two years later the South Carolina Beachfront Management Act was enacted, which barred Lucas from erecting any permanent habitable structures on the parcels. Lucas filed suit alleging that the ban on construction deprived him of all "economically viable use" of his property. He further alleged that this deprivation of use effected a taking and triggered the requirement of just compensation.
In the situation discussed in this opinion, the private landowner (developer) is alleging that the City of Zachary took his property by adopting map revisions which placed his property in a "floodway." As a result of this property being placed in a floodway, the developer would most likely allege that the Property was taken for the public purpose of safety, to avoid flooding in the area. The developer is ultimately asserting a claim much like the one in Lucas which states that the ban on construction deprived him of all "economically viable use" of his property and, therefore, effected a taking which requires just compensation. *Page 7 
In Lucas, the Court held that there are two types of regulatory actions that can categorically be characterized as a "taking" without undertaking a thorough factual analysis. These actions are: (1) regulations that compel the property owner to suffer a physical "invasion" of his property, and (2) regulations which deny an owner all economically beneficial or productive use of land.[25] Lucas, therefore, sets forth a rule that owners physically deprived of property or deprived of all economically beneficial use their property are categorically entitled to compensation.[26] The Court further held that an owner not deprived of all use simply does not benefit from the categorical analysis and must undergo a fact-specific determination.[27] In considering the facts set forth in your opinion request, we are most likely dealing with regulations which deny an owner of a significant percentage and/or all of the economically beneficial or productive use of his land.
While regulations that deny an owner of all economically beneficial or productive use of land will most likely be considered a categorical taking under the holding in Lucas, "an unconstitutional taking of private property does not result merely because the owner is unable to develop it to its maximum economic potential."[28] The United States Supreme Court has held that "[a]nything less than a "complete elimination of value," or a "total loss," . . . [will] require the kind of analysis applied in Penn Central.[29] In PennCentral, the Court stated, "we have frequently observed that whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely `upon the particular circumstances [in that] case.'"[30] The Court also indicated that the proper focus must be on remaining uses of the property in light of the regulatory action, rather than on the diminution in value.[31] *Page 8 
Louisiana courts have held that "if the regulation deprives a property owner of all practical use of his property without compensation will an unconstitutional taking have occurred."[32] While a substantial portion of the property described in your opinion request has already been developed, it is the understanding of this Office that the area in question was sub-divided prior to any of this development.[33]
Considering the fact that several of these sub-divided areas are now primarily or completely located within a floodway, the burden of proving that these tracts are economically useless hinges upon whether or not the developer can prove, in a court of law, that he has been deprived of all practical use of these tracts.[34] While this opinion may make certain limited conclusions with regard to the facts provided, the consideration of various factual nuances and a meaningful application of the law to those facts remains within the province of the courts.
Inverse Condemnation
If a landowner proves in a court of law that there was a regulatory taking that denied him of "all economically beneficial or productive use of his land," the Louisiana Constitution requires just compensation even if no formal expropriation proceedings have been initiated.[35] The Legislature has not provided a statutory procedure whereby an owner can seek damages for an uncompensated taking or damaging, but an action for inverse condemnation arises out of the self-executing nature of the constitutional command to pay just compensation.[36] The action for inverse condemnation provides a procedural remedy to a property owner seeking compensation for land already taken or damaged against a governmental or private entity having the powers of eminent domain where no expropriation has commenced.[37] *Page 9 
To establish inverse condemnation, the landowner will have to show that: (1) a recognized species of property right has been affected; (2) the property has been taken or damaged in a constitutional sense; and (3) the taking or damaging was for a public purpose under La.Const. art. 1 § 4.[38]
In considering an inverse condemnation action for facts presented in your request, it is clear that the owner's rights to the property have been affected by the property being classified as a "floodway." It is also clear that the floodway designation of the property was for the public purposes of safety and flood control. The issue then turns to whether or not the property has been taken or damaged, in a constitutional sense, which is a fact specific determination that only a court of competent jurisdiction can make. The Louisiana First Circuit Court of Appeal has held that a governmental taking may occur in the form of zoning or rezoning.[39] An unconstitutional taking of private property does not, however, result merely because an owner is unable to develop it to its maximum economic potential.[40] The First Circuit held that a regulatory program that adversely affects property values does not constitute a taking unless it destroys a major portion of the property's value.[41] Once again, the question of whether a compensable taking has occurred is one that only a court can answer.
 CONCLUSION
La.Const. art. 1 § 4 states that property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner for his benefit. This compensation is required only upon a judicial determination that (1) a recognized species of property right has been affected; (2) the property has been taken or damaged in a constitutional sense; and (3) the taking or damaging was for a public purpose.
Here, the first and third requirements are easily satisfied. The property rights of the developer were affected immediately once the property was placed in a floodway the *Page 10 
"taking" was clearly for a public purpose, establishing the floodplain for public safety. The issue here is whether or not the property has been taken or damaged in a constitutional sense. While the developer's property rights were adversely affected, a court must decide whether the level of adverse affect and damage to the property was taken or damaged in a constitutional sense.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
Yours very truly,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ DANIEL D. HENRY JR Assistant Attorney General
JDC/DDH/jv
[1] Layne v. City of Mandeville,633 So.2d 608. (La.App. 1 Cir. 1993).
[2] Annison v. Hoover,517 So.2d 420, 423 (La.App. 1 Cir. 1987), writ denied,519 So.2d 148 (La. 1988).
[3] In information provided by you to the Attorney General's Office, you indicated that of the 200 acre tract in question, approximately 113 acres remains undeveloped. The remainder of the tract was sub-divided and developed prior to the City of Zachary's adoption of the 2008 Flood Insurance Rate Map update by FEMA.
[4] 44 C.F.R. § 59.2.
[5] 44 C.F.R. § 60.3(a)(3).
[6] 44 C.F.R. § 60.1(d).
[7] Id.
[8] 44 C.F.R. § 78.4(b).
[9] 44 C.F.R. § 59.1; Zachary Municipal Code § 46-46-27.
[10] La.R.S. 38:84(D).
[11] 33 U.S.C. § 701b-12 (a) states that:
[b]efore construction of any project for local flood protection, or any project for hurricane or storm damage reduction, that involves Federal assistance from the Secretary, the non-Federal interest shall agree to participate in and comply with applicable Federal floodplain management and flood insurance programs.
[12] Zachary Municipal Code § 46-1.
[13] 44 C.F.R. § 59.1.
[14] 44 C.F.R. § 60.3(d)(3); Zachary Municipal Code § 46-115(1).
[15] 44 C.F.R. § 60.3(d)(3). 42 U.S.C. § 4129 states that, "[t]here is hereby established in the Federal Emergency Management Agency the position of Federal Insurance Administrator."
[16] Id.
[17] See FEMA FIRMs Panel 35 of 360, No. 22033C0035E, dated May 2, 2008, and Panel No. 45 of 360, No. 22033C0045E, dated May 2, 2008.
[18] Zachary Municipal Code §§ 46-59 and 46-115.
[19] U.S. Const., Amend. 5.
[20] La.Const. Art. 1 § 4.
[21] La.Const. Art. 1 § 4 (B)(2).
[22] La.Const. Art. 1 § 4 (A). See also, La. Atty. Gen. Op. No. 05-0373, for a discussion of governmental authority to preserve the public peace, property, health, and/or safety of the public.
[23] U.S. Const., Amend. 5, La.Const. Art. 1 § 4.
[24] Lucas v. South Carolina Coastal Council,505 U.S. 1003 (1992).
[25] Layne v. City of Mandeville, 93-0046 (La.App. 1 Cir. 12/29/93), 633 So.2d 608, 611; citingLucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992).
[26] Id (emphasis added).
[27] Id.
[28] Major v. Pointe Coupee Parish Police Jury, 07-0666 (La.App. 1 Cir. 12/21/07) 978 So.2d 952; citing, StandardMaterials, Inc. v. City of Slidell, 96-0684 (La.App. 1 Cir. 9/23/97), 700 So.2d 975, 984; State, Dept. ofSocial Services v. City of New Orleans, 95-1757 (La.App. 4 Cir. 5/29/96), 676 So.2d 149, 154, writ denied, 96-2143 (La.11/8/96), 683 So.2d 278.
[29] Tahoe-Sierra Preservation Council, Inc. v. Tahoe RegionalPlanning Agency, 535 U.S. 302, 330 (2002).
[30] Penn Cent. Transp. Co. v New YorkCity (1978) 438 US 104, 124, citing United States v. Central EurekaMining Co., 357 U.S. 155 (1958) and UnitedStates v. Caltex, Inc., 344 U.S. 149 1952).
[31] Penn Cent. at 130.
[32] Major v. Pointe Coupee Parish Police Jury, 07-0666 (La.App. 1 Cir. 12/21/07) 978 So.2d 952, 956 (emphasis added) citing Standard Materials, 96-0684 (La.App. 1 Cir. 9/23/97) 700 So.2d 975, 984. See alsoLayne v. City of Mandeville, 633 So.2d at 610.
[33] You stated that 113 of 200 acres remain undeveloped in the information you provided to this Office, which means that approximately 83 acres has already been developed.
[34] "Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole." PennCent. Transp. Co. v. City of New York, 438 U.S. 104 (1978).
[35] Belle Company, LLC v. State ex rel. Dept. of EnvironmentalQuality, 08-2382 (La.App. 1 Cir. 6/12/09), ___ So.3d ___,2009 WL 1643337.
[36] Id., citing State, Department of Transportation andDevelopment v. Chambers Investment Company, Inc.,595 So.2d 598, 602 (La. 1992).
[37] Id.
[38] Belle Company, citing Suire v. Lafayette City-ParishConsol. Government, 04-1459 (La. 4/12/05) 907 So.2d 37, 60.
[39] Annison v. Hoover, 517 So.2d 420, 422-423. (La. App. 1 Cir. 1987), citing United States Supreme Court in FirstEnglish Evangelical Lutheran Church of Glendale v. County of LosAngeles, California, 482 U.S. 304 (1987).
[40] State, Department of Social Services v. City ofNew Orleans, , 95-1757 (La.App. 4th Cir. 5/29/96) 676 So.2d 149,149, writ denied, 96-2143 (La.11/8/96),683 So.2d 278; Dolan v. City of Tigard, 512 U.S. 374 (1994);Aeins v. Tiburon, 447 U.S. 255, 260 (1980).
[41] Annison at 423.