JOSEPH ROBERT, GLORIA DECUIR-ROBERT, ALBERT BIERRIA, GWENDOLYN BIERRA,[1] ET AL

VERSUS

STATE OF LOUISIANA AND ABC INSURANCE COMPANY

\* NO. 2020-CA-0524

\* COURT OF APPEAL

\* FOURTH CIRCUIT

\* STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-09374, DIVISION "I-14"
Honorable Piper D. Griffin, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Paula A. Brown)

**BELSOME, J., CONCURS IN THE RESULT**
**LOBRANO, J., CONCURS IN THE RESULT**

John Karl Etter Esq.,
Roy J. Rodney, Jr. Esq.,
RODNEY & ETTER, LLC
935 Gravier Street,
New Orleans, LA 70112

     COUNSEL FOR PLAINTIFF/APPELLEE

Andre' Collins Gaudin
Craig J. Canizaro
Christopher Kent Tankersley
BURGLASS & TANKERSLEY, LLC
5213 Airline Drive
Metairie, LA 70001

---

[1] The correct spelling is "Bierria" which will be used throughout the opinion.

Machelle R. L. Hall
Ryan M. Seidemann
Candice Hillman
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. 3rd Street, 6th Floor
P.O. Box 94005
Baton Rouge, LA 70802


     COUNSEL FOR DEFENDANT/APPELLANT


                 **REVERSED IN PART;**
                 **AFFIRMED IN PART;**
                 **REMANDED**
                 **AUGUST 12, 2021**

This matter involves property law. Defendants/Appellants, State of Louisiana, Through the Governor, The Division of Administration, State Land Office ("SLO"), and the Southeast Louisiana Flood Protection Authority - East ("FPA") jointly with Orleans Levee District ("OLD") (collectively the "Defendants"), appeal the district court's June 18, 2020 judgment which granted, in part, Plaintiffs'/Appellees', Joseph Robert, Gloria Decuir-Robert, Gwendolyn Bierria and putative class members[2] (collectively the "Plaintiffs"), motion for partial summary judgment and found that the enactment of La. R.S. 38:225 via Acts 2015, Number 287, Section 1 (hereinafter referred to as "La. R.S. 38:225, as amended in 2015") was a taking of Plaintiffs' properties "as a matter of law." In addition, Defendants' appeal the portion of the district court's judgment which denied, in part, Defendants' motions for summary judgment on Defendants' prescription claims.[3]

---

[2] As of the time of this appeal, the class had not been certified, and no information has been provided to this Court that the class has been certified. The proposed class is owners of immovable property abutting London Avenue Canal, in New Orleans, Louisiana from August 1, 2015 to present.

[3] Generally, prescription is raised via the procedural vehicle of the peremptory exception, but the defense of prescription may also be raised by motion for summary judgment. *Hogg v. Chevron USA, Inc.*, 09-2632, p. 6 (La. 7/6/10), 45 So.3d 991, 997 (footnote omitted)(citations omitted).

For the reasons set forth below, we reverse, in part, the district court's judgment, granting Plaintiffs' motion for partial summary judgment. The district court's judgment denying Defendants' prescription claims is affirmed.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendants are political subdivisions of the State of Louisiana. Plaintiffs are owners of immovable property that abuts the London Avenue Canal (the "Canal").[4] The Canal is an "outfall drainage canal" that is a non-riparian waterway. *See* La. R.S. 38:225 (discussed *infra*). A levee is constructed on the east and west sides of the Canal.

In 2016, Plaintiffs filed suit against the State of Louisiana, and in 2017, Plaintiffs amended their petition and specifically named Defendants.[5] The petition alleged Defendants committed an uncompensated taking of Plaintiffs' property through the 2015 amendment to La. R.S. 38:225. Prior to the 2015 amendment, La. R.S. 38:225, which was codified in 1950, provided as follows:

- La. Acts 1892, No. 16, prohibited any placement:

  [U]pon any . . . levee or levees fronting any lake or canal or waterway subject to the control or surveillance of the district board of levee commissioners or police juries or municipal corporations, any lumber, building material, fuel, fences, buildings, constructions, brick, sand, clay, or any matter or any kind or character which obstructs the levee, or interferes with the safety thereof, or is an obstacle to the construction or repair thereof.

- La. Acts 1934, No. 154, extended the prohibition contained in the 1892 statute to a corridor "within six feet of any part of the levees fronting any

_____

[4] The Roberts purchased their property in November 2004, and Ms. Bierria accepted the donation of her property in August 1994.

[5] The original petition named the State of Louisiana via the Louisiana Legislature. After the State objected, the district court ordered that Plaintiffs name a specific state agency. Plaintiffs filed the second amended and supplemental petition, naming the Defendants. A third amended petition, wherein the allegations asserted are not germane to the issues raised on appeal, was filed on or about November 8, 2018.

river, lake, canal, or waterway subject to the control or surveillance of the district board of levee commissions or police juries, or municipal corporations or other duly authorized bodies or departments."

- La. R.S. 38:225 (1950) codified the six-foot buffer.

- La. R.S. 38:225 (1966) was amended and reenacted by La. Acts 1966, No. 244, and provided in part:

  No person shall: Place or cause to be placed upon or within six feet of any part of the levee fronting any waterway subject to the control or surveillance of police juries, levee boards, municipal corporations, or other authorized boards any object, material, or matter of any kind or character which obstructs or interferes with the safety of the levees or is an obstacle to the inspection, construction, maintenance, or repair any levee . . . .

- La. R.S. 38:225, effective August 15, 2011 to July 31, 2015, extended the six-foot buffer to a fifteen-foot buffer.

In 2015, by Acts 2015 Number 287, Section 1, La. R.S. 38:225 was amended effective August 1, 2015. Section (A)(1)(a) of 38:225 continued the fifteen-foot buffer to any waterway fronting a levee, whereas, Section (A)(1)(b)(i) and (ii) provided that the three named waterways, which included the Canal, have a six-foot buffer, unless the federal government determined that a fifteen-foot buffer was necessary. Section (A)(1)(b)(i) and (ii) provided in pertinent part:

A. No person shall:

\* \* \*

(b)(i) Place or cause to be placed upon or within six feet of any part of a levee fronting the 17th Street, Orleans Avenue, or London Avenue outfall drainage canals located in Orleans Parish that is not used for commercial navigation, and is subject to the control or surveillance of police juries, levee boards, municipal corporations, or other authorized boards or departments, any object, material, or matter of any kind or character which obstructs or interferes with the safety of the levees, or is an obstacle to the inspection, construction, maintenance, or repair of any levee; or place or cause to be placed any object, structure, material, or matter of any kind or character upon any part of any land which the state or any agency or subdivision thereof may own or acquire by deed, lease, servitude, charge, or otherwise, and through its authorized representative, may donate, grant, or otherwise convey to the United States rights-of-way, easements, or

3

other servitudes for the construction, improvement, or maintenance of any flood-control structures, or natural or other waterway, which may obstruct or interfere with the improvement or maintenance of such waterway, or use of the land for flood-control purposes.

(ii) Item (i) of this Subparagraph shall not be applied if the federal government, including but not limited to the United States Army Corps of Engineers or the Federal Emergency Management Agency, requires, by law or regulation, the prohibition in Item (i) of this Subparagraph to be greater than six feet. In that event, the prohibition in Subparagraph (1)(a) of this Subsection shall apply to any part of a levee fronting the 17th Street, Orleans Avenue, or London Avenue outfall drainage canals located in Orleans Parish.[6]

Enforcement of the statute is contained in sections (B), (D), (E), and (F) of La. R.S. 38:225. Section (B) provides that after 48-hours' notice to the property owner, a governing authority that has jurisdiction of the levee may remove any "object or objects, structures or other obstructions" within the corridor at the risk and expense of the property owner. Section (D)(2) establishes a civil penalty for those in Orleans Parish who violate La. R.S. 38:225. Section (E) provides that the governing authority that has jurisdiction of the levee "may bring a civil action for damages and/or injunctive relief, including but not limited to the issuance of a mandatory injunction," and "[i]n any suit for the issuance of an injunction, proof of irreparable harm shall not be necessary."

In the petition, Plaintiffs alleged a legislative taking as result of La. R.S. 38:225, as amended in 2015.[7] Specifically, they asserted the following causes of action: (1) Fifth Amendment Takings Clause Violation pursuant to the Fifth Amendment of the United States Constitution and Louisiana Constitution, Article I, § 4; (2) inverse condemnation; and (3) denial of equal protection under the

---

[6] La. R.S. 38:225 was amended, effective August 1, 2016, with no relevant changes to this issue.

[7] Plaintiffs asserted that as property owners of land abutting the Canal, they were not treated in the same manner as the property owners of land abutting the 17th Street Canal, who allegedly settled their claims with the State for taking their land, pursuant to La. R.S. 38:225.

Louisiana State Constitution.[8]  In response, Defendants filed answers to the petition, asserted affirmative defenses and exceptions, including exceptions of no cause of action and FPA/OLD filed an exception of prescription, all of which were denied.[9]

In addition, the parties filed three separate motions for summary judgment. In FPA/OLD's and SLO's motions for summary judgment,[10] each entity raised prescription as a defense, which the district court denied in the June 18, 2020 judgment.[11]  Plaintiffs moved for partial summary judgment on the following pertinent grounds:

---

[8] There were no allegations in the petition that the State took ownership of the properties, physically entered the properties, removed Plaintiffs' property, or enforced La. R.S. 38:225, as amended in 2015, regarding Plaintiffs' properties.

[9] The Defendants filed exceptions of no cause of action, arguing that the plaintiffs had not asserted valid causes of action against them for inverse condemnation and equal protection violations.  FPA/OLD filed an exception of prescription for any claims against them.  A hearing was held on December 18, 2019, and on January 17, 2020, after which the district court denied the exceptions.  FPA/OLD sought review by this Court which was denied. *Roberts v. State*, 20-53 (La. App. 4 Cir. 3/9/20)(unpubl.).

[10] FPA/OLD asserted it was entitled to summary judgment on the following grounds: (1) Plaintiffs' had no evidence that there was a taking; (2)  Plaintiffs' had no support to prove their alleged equal protection claims; and  (3) Plaintiffs' alleged taking and equal protection claims prescribed.  The district court granted summary judgment as to Plaintiffs' equal protection claims and denied the other two claims. SLO asserted it was entitled to summary judgment on the following grounds: (1) Plaintiffs failed to prove a taking because their "properties were subject to the restrictions of La. R.S. 38:225 even before the amendment of that statute in 2015"; (2) Plaintiffs could not support their equal protection claim; (3) Plaintiffs could not support their claim of negligent recordation by SLO; and (4) Plaintiffs' alleged taking claims prescribed.  The district court granted the summary judgment as to the challenge to the Plaintiffs' equal protection and negligent recordation claims, but denied the other two claims.  FPA/OLD and SLO each sought review by this Court.  The matters were consolidated, and this Court denied review. *Robert v. State*, 20-273, 20-277 and 20-338 (La. App. 4 Cir. 9/10/20)(unpubl.). Defendants sought review by the Supreme Court, and the Supreme Court denied the writ, noting that Defendants had an adequate remedy on appeal, which was pending in this Court.  *Robert v. State*, 20-01186 (La. 12/22/20), 307 So.3d 202.

[11] In support of its opposition to Defendants' motions for summary judgment, Plaintiffs filed the affidavit of a prior FPA commissioner, Strafford Goins, Sr.  In addition, Plaintiffs incorporated the exhibits they filed in support of their motion for partial summary judgment, which will be discussed *infra*.

(1) La. R.S. 38:225, as amended in 2015, was an unconstitutional legislative taking and regulatory taking of Plaintiffs' property on the face of the statute, for which the State of Louisiana, through the SLO, the FPA and OLD are liable for inverse condemnation damages and compensation, pursuant to the Louisiana Constitution, La. R.S. 13:5111 and La. R.S. 38:301;

(2) Failure of SLO to properly record the taking in the public land records; and

(3) Injunctive relief requiring SLO to survey and determine the physical boundaries of the portions of Plaintiffs' properties that were subject to the use restrictions of La. R.S. 38:225.

In support of the motion for partial summary judgment, Plaintiffs attached thirty-eight (38) exhibits. The following pertinent exhibits were not objected to by Defendants:

- Exhibit 1, affidavit of Jimmie Thorns, Jr., wherein he attested he is an expert and "[i]f called to testify at a hearing on plaintiffs' motion for class certification, I would provide expert opinions regarding the impacts of legislative takings and property use restrictions on the market value of properties, real estate disclosures, and calculation of the reduction of property values due to legislative takings and property use restrictions." He attested he was of the opinion that "Plaintiffs were unable to build, plant, landscape or use those portions of their property in a meaningful way," and "the values of class members properties were reduced by enactment of Acts 2015, No. 287, section I." He explained that "[a] common, accepted . . . appraisal methodology could be used to determine the reduced value of all class members property due to the legislative taking via Acts 2015, No. 287, Section 1";

- Exhibits 2, 3, and 4, affidavits of Mr. and Mrs. Roberts and Ms. Bierria, wherein each attested in pertinent part that "[a]s a result of the legislative adoption of Louisiana Act 2015, No. 287, §1, I have been unable to experience full and peaceful possession of my property, and "I have been unable to build, plant, landscape, or use the affected portions of my property in any meaningful way"; and

- Exhibit 5, conveyance records showing a cash sale of the property located at 5302 Warrington Drive, New Orleans to the Roberts in November 2004, and a donation of the property located at 5286 Warrington Drive, New Orleans, to Ms. Bierria in August 1994.[12]

---

[12] In addition, Plaintiffs submitted the following exhibits in support of its motion for partial summary judgment, which were not objected to by Defendants:

Exhibit 9, a copy of La. Atty. Gen. Op. No. 1995-106;
Exhibit 10, a copy of *Knick v. Town of Scott, Pennsylvania*, __ U.S. ___, 139 S. Ct. 2162 (2019);
Exhibit 11, a copy of a spread sheet of property addresses with the caption, "U.S. Army Corps of Engineers-New Orleans District, London Avenue Canal Eastbank (New

FPA/OLD objected to twenty-three (23) exhibits[13] filed by Plaintiffs on the ground

these exhibits were not of the type permitted by La. C.C.P. article 966(A)(4).[14]

Defendants filed oppositions to Plaintiffs' motion for partial summary

judgment. FPA/OLD filed exhibits A through H in support of its opposition.[15]

---

Orleans/Orleans Parish) Floodwall to Levee Toe +6 Feet Offset Distances (In Feet) 23 October 2000," which set forth addresses of properties located on Warrington Drive and Pratt Drive;
Exhibit 12, photographs captioned in part "London Avenue Outfall-Channel . . . tree removal plan – 16 October 2006";
Exhibit 13, answers to interrogatories by FPA which were propounded by the Plaintiffs;
Exhibits 17 and18, excerpts of the La. C.C.P. art. 1442 depositions of a representatives from FPA conducted in August of 2019;
Exhibit 29, excerpts of the La. C.C.P. art 1442 deposition of a representative from SLO;
Exhibit 36, a letter dated June 5, 2015 from FPA to Mr. Robert stating that Mr. Robert did not need a permit to build a shed on his property located at 5302 Warrington Drive because where the shed was to be built was outside of OLD's "enforcement zone"; and
Exhibit 37, a photograph which does not contain a caption indicating what the photograph is depicting.

[13] The following exhibits were objected to by Defendants:

Exhibit 6, Property List spreadsheet ;
Exhibit 7, Authorization for Right of Entry ("ROE") for Construction dated 8/26/2013;
Exhibit 8, Authorization for ROE for Access and Geotechnical Investigations Permanent Pumps, 17th Street and London Avenue Outfall Canals dated 4/13/2009;
Exhibit 14, August 2, 2007 letter from USACE [United States Army Corps of Engineers] to Mr. Spencer;
Exhibit 15, Photographs;
Exhibit 16, January 23, 2006 USACE Memo re: Plaquemines Parish Levees;
Exhibits 19, 20, 31, Times-Picayune articles;
Exhibit 21, FPA board meeting Minutes from 9/15/2011;
Exhibit 22, a request made on 9/15/2011 for an attorney-general opinion;
Exhibit 23, FPA board meeting Minutes from 2/19/2015;
Exhibit 24, FPA Subpoena Duces Tecum Response from November 28, 2016;
Exhibit 25, FPA Permit Response;
Exhibit 26, Survey of 5427 Pratt Drive;
Exhibit 27, FPA Safety Permit Policy dated 7/12/2017;
Exhibit 28, FPA Permit Process dated 8/8/2016;
Exhibit 30, Draft of London Avenue Canal and Levees Manual, 1986;
Exhibit 32, Report by USACE re: Tree Removals at Floodwalls and Levees dated May 2006;
Exhibit 33, USACE News Release dated 3/23/2007;
Exhibits 34 and 35, Correspondence from FPA and USACE dated 7/30/2012 and 7/3/2013; and
Exhibit 38, Survey of Property on Pratt Drive.

[14] La. C.C. P. art. 966(A)(4) provides in part:
The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.

Pertinently, exhibit H was the affidavit of Michael W. Truax, who was hired by FPA/OLD as an expert to investigate whether the real estate related damages alleged had resulted in a taking. He attested, in part, that the named Plaintiffs' properties were not representative of the class. In addition, he attested as follows:

> (6) In connection with my retention I reviewed the Affidavit of Jimmie Thorns, Jr, retained by plaintiffs, dated December 26, 2016.
>
> (7) My full opinions set forth in connection with the above captioned matter are contained within the attached report I authored, dated December 30, 2019, and attached hereto as Exhibit "2;"[16]
>
> (8) No support or basis has been provided in support of Mr. Thorns' opinion that "plaintiffs are unable to build, plant, landscape or use portions of property in any meaningful way." Accordingly, this statement cannot be credibly supported as factually correct.

SLO filed exhibits A through D in opposition to Plaintiffs' partial motion for summary judgment.[17]

A hearing on Plaintiffs' motion for partial summary judgment was held on February 21, 2020, and recessed until March 3, 2020.[18] At the hearing, the district

---

[15] FPA/OLD filed the following exhibits in opposition to Plaintiffs' motion:

Exhibits A, B, and C, Plaintiffs' petitions for damages;
Exhibits D, E, and F, copies of La. R.S. 38:225, effective 1951, effective August 1, 2015 to July 31, 2016, effective August 15, 2011 to July 31, 2015 and Act Nos. 16,17, 18, 154, 155, 244;
Exhibits E, and F, excerpts of the depositions of Mr. and Mrs. Roberts conducted on November 26, 2019;
Exhibit G, excerpts of the deposition of Ms. Bierria conducted on December 18, 2019;

[16] Exhibit 2, purporting to be the expert report of Mr. Truax, is not in the appellate record.

[17] SLO filed the following exhibits in opposition to Plaintiffs' motion:

Exhibit A, excerpts of the La. C.C.P. art. 1442 deposition of SLO's representative Cheston Hill conducted on February 11, 2019;
Exhibits B and C, excerpts of Mr. and Mrs. Robert's depositions conducted on November 26, 2019; and
Exhibit D, excerpts of Ms. Bierria's deposition conducted on December 18, 2019.

court stated it did not consider any exhibits "necessary," because Plaintiffs' raised only a legal issue. After taking the matter under advisement, the district court issued a written judgment on June 18, 2020, wherein it ruled in part:

> IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Motion for Partial Summary Judgment on behalf of plaintiffs, Joseph Robert, Gloria Decuir-Robert, Gwendolyn Bierria, and a putative class, is GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent the Court finds the enactment of La. R.S. 38:225 via Acts 2015 Number 287 was a taking of plaintiffs' property and class members' property as a matter of law. The Court DENIES all other relief sought in the motion and does not decide at this time whether the taking was by the Southeast Louisiana Flood Protection Authority-East and Orleans Levee District, or whether the taking resulted in any damages by the plaintiffs or putative class. The Court further finds pursuant to La. C.C.P. article 1915 there is no just reason for delay and designates its ruling as to plaintiffs' motion for partial summary judgment as a final judgment.

As to the exhibits objected to by Defendants, the district court ruled as follows:

> It IS FURTHER ORDERED, ADJUDGED and DECREED that the Court considered all objections raised by defendants to exhibits submitted by plaintiffs in support of their Motion for Partial Summary Judgment and in opposition to the motions for summary judgment filed by all defendants. The Court SUSTAINED all objections raised to any exhibit that was not in compliance with La. C.C.P. art. 966(A)(4). The Court further noted it considered the questions presented by competing motions for summary judgment to be questions of law not fact.

Defendants appeal the portion of the district court's judgment, granting, in part, Plaintiffs motion for partial summary judgment and denying Defendants motions for summary judgment as to the claims of prescription.

---

[18] The district court's judgment references the hearing continued on March 2, 2020, whereas, the transcript reflects the hearing was held on March 3, 2020.

## DISCUSSION

On appeal, Defendants assert that the district court erred in granting Plaintiffs' motion for partial summary judgment and denying its claims of prescription. We summarize Defendants individual assigned errors as follows:

FPA/OLD

(1) The district court erred in determining that La. R.S. 38:225, as amended effective August 1, 2015, constituted a taking of Plaintiffs' properties as a matter of law, as the language of the statute does not satisfy the elements of a regulatory taking;

(2) The district court erred in granting partial summary judgment in favor of the Roberts and the Bierrias without conducting any fact finding;

(3) The district court erred in granting partial summary judgment in favor of "putative class members without class certification and without conducting any fact finding relative to putative class members"; and

(4) The district court erred in granting, in part, Plaintiffs' motion for partial summary judgment because Plaintiffs' claims are prescribed.

SLO

(1) The district court erred in finding a taking based on the 2015 amendment to La. R.S. 38:225, which reduced the levee servitude burden on the landowners;[19]

(2) The district court erred in granting Plaintiffs' motion for partial summary judgment finding La. R.S. 38:225 was a taking as a matter of law because Plaintiffs failed to carry their burden of proof to establish the elements of a taking;

(3) The district court failed to enforce the proper burden on the Plaintiffs where this matter has prescribed on the face of the petition, and where the undisputed facts demonstrate that any possible taking that might have occurred happened more than three years prior to the filing of the lawsuit in 2016; and

---

[19] We note Plaintiffs and FPA/OLD dispute whether there is a servitude. In addition, this issue was not presented to the district court and the district court did not rule on this issue.

(4) The district court erred in failing to dismiss SLO as a defendant as there was no evidence that it had anything to do with any possible taking.

La. C.C.P. art. 966(F) provides that "[a] summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." In addition, La. C.C.P. art. 966(D)(2) provides:

> The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

Generally, the party moving for summary judgment has the burden of proof. Once the moving party has met its burden on summary judgment, the adverse party must produce factual support sufficient to establish that he/she will be able to satisfy his/her evidentiary burden of proof at trial. La. C.C.P. art. 966(D); *Davis v. A Bar & Grill with a Bite, Inc.*, 19-1928, p. 2 (La. 3/16/20), 294 So.3d 1051, 1052. This Court set forth the standard of review for a summary judgment in *Filmore Parc Apartments II v. Foster*, 18-0359, 2018 WL 5830453, at *11 (La. App. 4 Cir. 11/7/18)(footnote omitted):

> "A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by the litigant." *Tate v. Touro Infirmary*, 17-0714, p. 1 (La. App. 4 Cir. 2/21/18), [317] So.3d [361], 2018 WL 992322, *writ denied*, 18-0558 (La. 6/15/18), 245 So.3d 1027 (citing La. C.C.P. art. 966(A)(1)). Generally, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). An appellate court's standard of review for a grant of a summary judgment is *de novo*, and it employs the same criteria district courts consider when determining if a summary judgment is proper. *Madere v. Collins*, 17-0723, p. 6 (La. App. 4 Cir. 3/28/18), 241 So.3d 1143, 1147 (citing *Kennedy v. Sheriff of E. Baton Rouge*, 05-1418, p. 25 (La. 7/10/06), 935 So.2d 669, 686). In

11

*Chanthasalo v. Deshotel*, 17-0521, p. 5 (La. App. 4 Cir. 12/27/17), 234 So.3d 1103, 1107 (quoting *Ducote v. Boleware*, 15-0764, p. 6 (La. App. 4 Cir. 2/17/16), 216 So.3d 934, 939, *writ denied*, 16-0636 (La. 5/20/16), 191 So.3d 1071), this Court explained:

> This [*de novo*] standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.

"The interpretation of a statute is a question of law that may be decided by summary judgment." *Gardner v. State, Department of Education,* 02-0643, p. 3 (La. App. 1 Cir. 3/28/03), 844 So.2d 311, 313. "When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute and the sole issue before us is a question of law as to the correct interpretation of the statute at issue." *Milbert v. Answering Bureau, Inc.*, 13-0022 (La. 6/28/13), 120 So.3d 678, 684 (citation omitted). When issues involve questions of law, such as interpretation of a statute, a *de novo* standard of review is applied. *See New Orleans Fire Fighters Pension & Relief Fund v. City of New Orleans*, 17-0320, p. 5 (La. App. 4 Cir. 3/21/18), 242 So.3d 682, 688 (citing *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't. of Econ. Dev.*, 10-0193, p. 9 (La. 1/19/11), 56 So.3d 181, 187). If the appellate court addresses a legal issue, it gives

no special weight to the findings of the trial court, but "exercises its constitutional duty to review questions of law *de novo*, after which it renders judgment on the record." *Gardner*, 02-0643, pp. 3-4, 844 So.2d at 3134 (citation omitted).

It is well-settled that in interpreting a statute, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the legislative intent." *S. Lafourche Levee Dist. v. Jarreau*, 16-0788, p. 7 (La. 3/31/17), 217 So.3d 298, 304 (citations omitted). "However, when a statute is susceptible of more than one interpretation, the court must apply the one that achieves the legislature's intent and best comports with the principles of reason and justice." *Id*. (citations omitted). "The starting point for interpretation of any statute is the language itself." *Id*. (quoting *Pierce Foundations, Inc. v. JaRoy Construction, Inc.*, 15-0785, p. 7 (La. 5/3/16), 190 So.3d 298, 303). The rules of statutory interpretation require the courts to be bound "to a strict interpretation of the plain language of the statutory provisions which are before us." *Milbert*, 120 So.3d at 684.

*DID THE DISTRICT COURT ERR IN GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT?*

The district court held that the enactment of La. R.S. 38:225 via Acts 2015, Number 287, Section 1, was a regulatory taking, on its face, of Plaintiffs' properties. The district court did not consider any facts or evidence, including the exhibits attached in support of and in opposition to Plaintiffs' motion for partial summary judgment. Thus, pursuant to La. C.C.P. art. 966(F), our review is limited

13

to whether the enactment of La. R.S. 38:225 via Acts 2015, Number 287, Section 1, was a regulatory taking of Plaintiffs' properties on its face, as a matter of law.[20]

On appeal, FPA/OLD argues that, on its face, La. R.S. 38:225, as amended in 2015, was a regulation that did not rise to an unconstitutional taking, explaining:

> A limited restriction enacted for the public good on the use of a portion of property does not rise to the level of an unconstitutional taking. This general principle has long been found in Louisiana jurisprudence. The Louisiana Supreme Court held in *Petit Anse Coteau Drainage Dist* v. *Iberia & V.R. Co.,* "uncompensated obedience to a regulation enacted for the public safety under the police power of the state" does not amount to an unconstitutional taking. 50 So. 512, 517 (La. 1909).

FPA/OLD further argue that La. R.S. 38:225, as amended in 2015, did not transfer ownership of Plaintiffs' property to the State, and it did not "deprive them of all economically beneficial use of property" to constitute an unconstitutional taking on the face of the statute. FPA/OLD assert that a factual inquiry was necessary to determine if Plaintiffs' properties were subject to enforcement of La. R.S. 38:225 and the extent of the alleged taking, if any, and the district court legally erred in failing to do so.

SLO, likewise, argues that the district court erred in finding La. R.S. 38:225, as amended in 2015, was a per se taking, writing:

> [T]here is absolutely no evidence that the Plaintiffs property was actually used or destroyed by any public entity, and certainly not by the Land Office. Instead, the district court has created a revolutionary new basis for a taking "as a matter of law" based on the

---

[20] This is an issue of first impression. We note that in *17th Street Canal Coalition v. Orleans Levee District*, 09-857 (La. App. 4 Cir. 9/15/09)(unpubl.), the issue before this Court, on writ of review, was whether there was a servitude on the 17th Street Canal, permitting regulation via La. R.S. 38:225 of the six-foot area of landowner's land abutting the 17th Street Canal. In the case *sub judice*, however, the issue of a servitude was neither raised in the motions for summary judgment nor ruled upon by the district court. *See* La. C.C.P. art. 966(F)("[a] summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time."). Thus, this issue is not properly before this Court at this time.

2015 amendment, summarily disposing with the normal requirement of evidence of an actual taking, use, damage, or destruction.

Conversely, Plaintiffs maintain that Acts 2015 Number 287 was an unconstitutional, uncompensated taking of their private property, asserting:

> Acts 2015, Number 287 was the first legislation to specifically name the London Avenue Canal, specifically restrict use of properties abutting the London Avenue Canal, impose civil and criminal penalties for placing objects on the rear portion of plaintiffs' properties, and create a potestative condition that would increase the restrictions, and the promulgation of an onerous permitting process by the Flood Protection Authority. Plaintiffs' real estate expert, Jimmie Thorns, Jr. and the plaintiffs testified by uncontradicted depositions and affidavits that due to the enactment of Acts 2015, Number 287 ("the Act"), the plaintiffs and the proposed class members: (1) are unable to experience full and peaceful possession of the property they own adjoining the levee; (2) are unable to build, plant, landscape, or use those portions of their property in any meaningful way; (3) have not been compensated for Act 2015, No. 287, §1's taking of the strip of land six (6) feet deep across the entire width of their respective properties; (4) have continued to pay taxes on the subject property and all other administrative fees.[21]

Plaintiffs also dispute Defendants' position that there was no taking because there was no physical invasion or deprivation of substantial use. Plaintiffs argue that restrictions set forth in La. R.S. 38:225 were "substantial and could extend to some of the Plaintiffs' homes."

Although the district court noted that there was no transfer of ownership, the district court concluded there was a taking as a matter of law. The district court stated, "I'm inclined to find that it is [a taking] because even without the true exercise of a taking [,] the fact is that the landowners have limited use of their properties under the provisions set forth and cannot do certain things to their properties under the provisions of the statute . . . unless they cross certain hurdles .

---

[21] Plaintiffs further cite to permit and insurance requirements; however, these are not included in the text of La. R.S. 38:225, which is at issue herein.

. . ."[22]  The district court stressed that no factual inquiry was made as it "is a question of law and more specifically the issue of whether there is a taking under the provisions that are applicable to the plaintiff's [sic] case."[23]

In *State, Through Dept. of Transp. and Dev. v. Chambers Inv. Co, Inc.*, 595 So.2d 598, 602 (La. 1992)(citation omitted), the Supreme Court held that an action for inverse condemnation, which is asserted by Plaintiffs in this case, provides a procedural remedy for a property owner to seek "compensation for land already taken or damaged against a governmental or private entity having the powers of eminent domain where no expropriation has commenced."  "Inverse condemnation claims derive from the Takings Clauses contained in both the Fifth Amendment of the U.S. Constitution and Art. I, § 4 of the Louisiana Constitution." *Avenal v. State*, 03-3521, p. 26 (La. 10/19/04), 886 So.2d 1085, 1104.  To establish inverse condemnation, a party must show that (1) a recognized species of property right has been affected; (2) the property has been taken or damaged in a constitutional sense; and (3) the taking or damaging was for a public purpose under Article I, § 4 of the Louisiana Constitution. *Chambers,* 595 So.2d at 603; *Sewell v. Sewerage & Water Bd. of New Orleans*, 20-0381, 2021 WL 717990, at \*6 (La. App. 4 Cir. 2/24/21).  In the case *sub judice*, the district court did not consider elements one (1) and three (3), but focused on element two (2), i.e., the property has been taken or damaged in a constitutional sense.

---

[22] It is a "well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment." *Wooley v. Lucksinger,* 09-0571, 09-0584, 09-0585, 09-0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id.*, 09-0571, 09-0584, 09-0585, 09-0586, p. 78, 61 So.3d at 572.

[23] In the June 18, 2020 judgment, the district court wrote that it did not decide "whether the taking resulted in any damages" to Plaintiffs.

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment of the U.S. Constitution, provides in pertinent part: "[N]or shall private property be taken for public use, without just compensation."[24] Similarly, La. Const. art. I, § 4 (B)(1) and (2) provide, in pertinent part:

> (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.

> (2) As used in Subparagraph (1) of this Paragraph and in Article VI, Section 23 of this Constitution, "public purpose" shall be limited to the following:
>
> * * *

> iii) Drainage, flood control, levees, coastal and navigational protection and reclamation for the benefit of the public generally.

Both the Takings Clause and La. Const. Article I, § 4, do not eliminate the state's police power to enact limitations on the use of private property. Louisiana Constitution Article I, § 4(A) provides that "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property," and "[t]his right is subject to reasonable statutory restrictions and the reasonable exercise of the police power."[25] "The [regulatory or] police power, unlike the power of eminent domain, is used to regulate; the power of eminent domain [is] used to acquire

---

[24] FPA/OLD assert, in its reply brief, that Plaintiffs limit their taking claim to the Louisiana law and do not assert a claim under the Takings Clause of the Fifth Amendment. In their petitions, however, under causes of action, Plaintiffs' assert a taking claim citing the Takings Clause of the Fifth Amendment, and the Louisiana constitution. In addition, as supported by the cases to be discussed *infra*, similar analyses are used by a court to determine a taking under the Louisiana and Federal constitutions.

[25] Louisiana Civil Code Article 477 defines "ownership" as "the right that confers on a person direct, immediate, and exclusive authority over a thing." "The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." *Id.*

property from private ownership." *Dep't of Highways v. Southwestern Elec. Power Co.*, 145 So.2d 312, 315-16 (1962)(footnote omitted).

In *Annison v. Hoover*, 517 So.2d 420, 422 (La. App. 1st Cir. 1987) (citation omitted), the first circuit explained that "[e]very person holds his property subject to the valid exercise of police power," and "[t]he adoption of a regulatory ordinance or the implementation of zoning are examples of the valid exercise of police power." The Louisiana Supreme Court in *Faulk v. Union Pac. R.R. Co.*, 14-1598, p. 30 (La. 6/30/15), 172 So.3d 1034, 1056-57 (citing *Lingle v Chevron U.S.A. Inc.*, 544 U.S. 528, 536-37, 125 S.Ct. 2074, 2080 (2005)), held that "federal jurisprudence recognizes that compensation may be required when a government *regulation* of private property is so onerous that its effect is tantamount to a direct appropriation or ouster [footnote omitted]." In *Annison,* 517 So.2d at 423, the appellate court explained that a regulatory taking occurs when the regulation destroys a major portion of the property value, writing:

> Language of the Fifth Amendment of the Federal Constitution and of Article 1, Section 4 of the Louisiana Constitution provides in part that private property shall not be taken for public use without just compensation. This does not prohibit public taking but places conditions upon public taking. It is clear that regulatory takings and physical takings are very different. Physical takings are easily identifiable while regulatory takings may or may not be. Additionally, regulatory programs that affect property values may or may not constitute takings. We hold that a regulatory program that adversely affects property values does not constitute a taking unless it destroys a major portion of the property's value. *Id.* 482 U.S. at ——, 107 S.Ct. at 2393, 96 L.Ed.2d at 272 (Stevens, J., dissenting). *See Bituminous Coal Association v. DeBenedictis,* 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980).

*See also*, *Neighbors First for Bywater, Inc. v. City of New Orleans/New Orleans City Council*, 17-0256, 2017 WL 6350339, at *8 (La. App. 4 Cir. 12/13/17). In *Simmons v. Bd. of Comm'rs of Bossier Levee Dist.*, 624 So.2d 935, 951 (La. App.

2nd Cir. 1993)(citation omitted), the appellate court explained that "[t]he pivotal issue [in whether a taking occurred] is whether the governmental interference with the free use and enjoyment of private property is substantial." This Court in *State, Dep't of Soc. Servs. v. City of New Orleans*, 95-1757, p. 7 (La. App. 4 Cir. 5/29/96), 676 So.2d 149, 154 (citation omitted), clarified that "[a]n unconstitutional taking of private property does not result merely because the owner is unable to develop it to its maximum economic potential." In *Major v. Pointe Coupee Par. Police Jury,* 07-0666, pp. 7-8 (La. App. 1 Cir. 12/21/07), 978 So.2d 952, 957 (citations omitted), the appellate court set forth examples of what did not constitute a taking such as "[t]he frustration of speculative economic gain or a lost prospective business opportunity is not a taking . . . [t]he denial of one avenue of selling or developing property does not amount to a taking . . . . [t]he reduction in the value of property when considering one of its possible uses is not necessarily equated with a taking."

Generally, whether it is a regulation vs. a regulatory taking involves a factual inquiry. In *Layne v. City of Mandeville*, 633 So.2d 608, 610 (La. App. 1st Cir. 1993), quoting *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893 (1992), the appellate court explained:

> The Supreme Court recently reiterated that in 70 years of "regulatory takings" jurisprudence since [*Pennsylvania Coal Co.*] *v Mahon*, [260 U.S. 393, 415, 43 S.Ct. 158, 160 (1922)],
>
> > we have generally eschewed any "set formula" for determining how far is too far, preferring to "engag[e] in . . . essentially ad hoc, factual inquiries." *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978) (quoting *Goldblatt v. Hempstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962).

In addition, in *Faulk*, 14-1598, p. 30, 172 So.3d at 1057 (citation omitted), the

Louisiana Supreme Court opined:

> [N]o magic formula enables a court to judge, in every case, whether a given government interference with property is a taking. In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the courts have recognized few invariable rules in this area. Most takings claims turn on situation-specific factual inquiries. [*Arkansas Game and Fish Commission v. U.S.*, 568 U.S. 23 at 32, 133 S.Ct. 511, 517].[26]

*See also Lakeshore Harbor Condo. Dev. v. City of New Orleans*, 603 So.2d 192,

195 (La. App. 4th 1992).[27]

However, the *Lucas* and *Faulk* courts recognized two categories of

regulatory action that do not require a case-specific factual inquiry into the public

interest advanced in support of the regulation. In *Lucas,* the United States

Supreme Court held:

> The first encompasses regulations that compel the property owner to suffer a physical "invasion" of his property. In general (at least with regard to permanent invasions), no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation. For example, in *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), we determined that New York's law requiring landlords to allow television cable companies to emplace cable facilities in their

---

[26] The *Faulk* court continued and explained that "[s]ome considerations for determining whether a taking has occurred include: the character of the land at issue; the property owner's distinct investment-backed expectations, a matter often informed by the law in force in the state in which the property is located; and the degree to which the invasion is intended or is the foreseeable result of authorized government action." *Id.*, 14-1598, p. 30, 172 So.3d at 1057 (citation omitted).

[27] In *Lakeshore Harbor Condo. Dev.*, 603 So.2d at 195, this Court, citing Article 1, Section 4 of the Louisiana Constitution explained, in pertinent part:

> [w]hat constitutes a "taking" is a factual issue based on whether the government's action destroys a major portion of the property's value. *Annison v. Hoover,* 517 So.2d 420 (La. App. 1st Cir.1987), *writ den[ied].,* 519 So.2d 148 (La.1988). A taking is accomplished when the government's action eliminates the practical economic uses of a property. *Robertson v. Parish of Jefferson,* 465 So.2d 787 (La. App. 5th Cir.1985); *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir. 1981), *cert. den[ied].,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).

apartment buildings constituted a taking, *id.,* at 435-440, 102 S.Ct., at 375-3178, even though the facilities occupied at most only 1 ½ cubic feet of the landlords' property, see *id.,* at 438, n. 16, 102 S.Ct., at 3177. *See also United States v. Causby,* 328 U.S. 256, 265, and n. 10, 66 S.Ct. 1062, 1067, and n.10, 90 L.Ed. 1206 (1946) (physical invasions of airspace); cf. *Kaiser Aetna v. United States,* 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (imposition of navigational servitude upon private marina[28]).

The second situation in which we have found categorical treatment appropriate is where regulation denies all economically beneficial or productive use of land.

*Id.,* 505 U.S. at 1015 (citations omitted).[29] In *Faulk,* the Louisiana Supreme Court reiterated *Lucas,* explaining:

[T]wo categories of regulatory action have generally been deemed to be per se takings or 'total regulatory takings,' requiring compensation: (1) when government requires an owner to suffer a permanent physical invasion of property, however minor; and (2) when a regulation completely deprives an owner of all economically beneficial use of property.

*Id.,* 14-1598, pp. 29-30 (La. 6/30/15), 172 So.3d 1034, 1057 (citations omitted);

*see also Layne v. City of Mandeville*, 633 So.2d at 611; *Rivet v. State Dep't of*

*Transp. & Dev.*, 635 So.2d 295, 297 (La. App. 5 Cir. 1994)(quoting *Lucas,* 505

U.S at 1020)("[w]hen state activity causes a landowner 'to sacrifice *all*

economically beneficial uses in the name of common good, that is, to leave his

property economically idle, he has suffered a taking.'"); and *Robinson v. City of*

---

[28] In *Kaiser Aetna*, the federal government required a private marina to allow the public access based on a navigational servitude. The court held it was a per se taking, because "the imposition of the navigational servitude in this context will result in an actual physical invasion of the privately owned marina." *Id.,* 444 U.S. at 180.

[29] In *Lucas,* the petitioner paid $975,000 for two residential lots on the Isle of Palms in Charleston County, South Carolina, on which he intended to build single-family homes. Following, the South Carolina Legislature enacted the Beachfront Management Act, S.C. Code Ann. § 48–39–250 *et seq.* (Supp. 1990), which had the direct effect of barring petitioner from erecting any permanent habitable structures on his two parcels.

*Baton Rouge*, No. CV 13-375, 2015 WL 13522820, at *8 (M.D. La. Mar. 20, 2015)(unpubl.).[30]

Turning to language of La. R.S. 38:225, as amended in 2015, which as discussed *supra* is the starting place of statutory interpretation, we conclude that the language is clear and unambiguous. On its face, La. R.S. 38:225(A)(1)(b)(i) and (ii) does not *compel* the property owner to suffer a physical invasion of his/her

---

[30] The *Robinson* Court provides further insight on the applicable law on this issue:

> "The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536, 125 S. Ct. 2074, 2080 (2005) (internal citation omitted). The Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power. . . . It is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Id.* at 537 (emphasis in original).

> The Supreme Court has explained that when a government regulation goes too far, it constitutes a regulatory taking. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). However, in 70 years of takings jurisprudence, the Supreme Court has generally eschewed any "set formula" for determining how far is too far, and prefers to engage in fact specific inquiries set out in *Penn Central Transportation Co. v. City of New York*. 438 U.S. 104, 124 (1978) (looking to factors to determine whether a taking occurred such as the economic impact on the claimant, interference with distinct investment-backed expectations, and the character of the government action). The public interest behind the regulation, such as the "health, safety, morals, or general welfare," will also be a factor in the analysis of whether a regulatory taking has occurred. *Penn Central*, 438 U.S. at 125. Ultimately, whether a regulatory taking has occurred will depend largely on the particular circumstances of each case. *Id.* at 124.

> However, the Supreme Court identified two situations which qualify as a regulatory taking not requiring a case-specific inquiry into the public interest advanced in support of the restraint: (1) regulations which compel the property owner to suffer a physical invasion of his property and (2) regulations which deny "all economically beneficial or productive use of land." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992). This is significant because if Defendants' decision deprived Plaintiffs of all economic benefit in Plaintiffs' land, Plaintiffs can recover regardless of how important the purposes behind Defendants' decision were. *See Lucas*, 505 U.S. at 1015. However, in circumstances in which an owner is not deprived of *all* economic benefit, the owner would not be able to recover automatically. *Id* at 1019 n. 8. In these circumstances, the *Penn Central* analysis is necessary to determine the extent of Plaintiffs' loss. *Id.*

*Robinson*, No. CV 13-375, 2015 WL 13522820, at *8.

property.  Only after notice is given to the property owner to remove an object and the owner fails to comply, may the governing authority enter the property.  In addition, we cannot say that the statute, *on its face*, denies Plaintiffs of *all* economically beneficial or productive use of the land.  In fact, as previously discussed, the district court noted, "I'm inclined to find that it is [a taking] because even without the true exercise of a taking [,] the fact is that the landowners have limited use of their properties under the provisions . . . ."  Accordingly, we conclude that the district court legally erred in finding La. R.S. 38:225 via Acts 2015 Number 287, Section 1 was a per se taking as a matter of law.[31]

Next, under our *de novo* review, we must determine if a factual inquiry supports a taking or inverse condemnation of Plaintiffs' properties.  To establish inverse condemnation, Plaintiffs had to submit evidence in support of their summary judgment that (1) a recognized species of property right has been affected; (2) the property has been taken or damaged in a constitutional sense; and (3) the taking or damaging was for a public purpose under Article I, § 4 of the Louisiana Constitution.  Based on the affidavits of the Roberts and Ms. Bierria and the cash sale deed and act of donation from the conveyance records, we find the first element of inverse condemnation was met.  The Roberts and Ms. Bierria, as the owners of their respective property, had, among other rights, the rights of use and enjoyment.  *See Lowenburg v. Sewerage & Water Bd. of New Orleans,* 19-0524, 2020 WL 4364345, at *7 (La. App. 4 Cir. 7/29/20).  However, no evidence was submitted to support ownership by the putative class.  Thus, genuine issues of

---

[31] As to the remaining assigned errors, FPA/OLD's and SLO's arguments challenging the district court's judgment granting Plaintiffs' motion for partial summary judgment are resolved or rendered moot by this Court's conclusion to reverse the district court's judgment, granting Plaintiff's motion for partial summary judgment and remanding the matter.

material fact remain as to element one (1) as applied to the putative class. Turning to the element two (2), has the property been taken or damaged in a constitutional sense, we find the appellate record is insufficient to determine this factor. As discussed *supra*, the district court failed to specifically state which exhibits submitted by Plaintiffs were inadmissible or those it declined to consider as required by La. C.C.P. art. 966(D)(2). In addition, the affidavits of Mr. and Mrs. Roberts and Ms. Bierria, along with each parties' expert, Mr. Thorns and Mr. Truax, contained only speculation as to the economic impact of the statute on the properties.[32] Furthermore, in their brief to this Court, Plaintiffs acknowledged they will have to establish "that their property was taken, the amount of their property that was taken, the value of the property taken and the severance damage to their remaining property." Thus, genuine issues of material fact remain as to whether the application of La. R.S. 38:225, as amended in 2015, to each of Plaintiffs' properties is a taking or inverse condemnation. Because there are genuine issues of fact as to elements one (1) and two (2), the third (3) element need not be addressed.

Since the district court legally erred in finding La. R.S. 38:225, as amended in 2015, was a per se taking as a matter of law, and genuine issues of material fact remain if a taking is supported after a factual inquiry, we reverse the district court's judgment as to this issue, and remand for further proceedings consistent with this opinion.

---

[32] See pertinent contents of affidavits discussed *supra*. Plaintiffs' asserted in their brief to this Court that they "have submitted evidence demonstrating that their property lost about $1.3 million worth of value." However, Plaintiffs do not cite to specific evidence and a review of the admissible evidence submitted in support of the summary judgment failed to support Plaintiffs' assertion.

*DID THE DISTRICT COURT ERR IN DENYING DEFENDANTS' CLAIM OF PRESCRIPTION?*

Alternatively, Defendants assert, if there was a taking, Plaintiffs' claims have prescribed,[33] and the district court erred in denying its claim of prescription. In response, Plaintiffs assert the "law of the case" doctrine precludes review of Defendants' prescription claim, as this Court has previously denied review. In *Leblanc v. 1555 Poydras Corp.*, 14-0610, pp. 6-7 (La. App. 4 Cir. 12/17/14), 156 So.3d 1222, 1226, this Court explained in pertinent part:

> We first note that a writ *denial,* as well as the reasons given therefor, are not authoritative and do not make law. *Davis v. Jazz Casino Co., L.L.C.,* 03-0276, 03-1223, p. 1 (La. 6/6/03), 849 So.2d 497, 498. A denial of supervisory review does not constitute the court's considered opinion on the allegations made in a writ application, but is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction in that case. *Johnson v. Mike Anderson's Seafood, Inc.,* 13-0379, p. 5 (La. App. 4 Cir. 6/11/14), 144 So.3d 125, 130; *State v. Whitton,* 99-1953, p. 16 (La. App. 4 Cir. 9/27/00), 770 So.2d 844, 853; *Sattar v. Aetna Life Ins. Co.,* 95-1108, pp. 3-4 (La. App. 4 Cir. 3/20/96), 671 So.2d 550, 552. . . . [T]he denial does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment [citations omitted].

Thus, this Court is not barred from reviewing Defendants' claims of prescription.

Turning to Defendants' prescription claim, "[w]hen prescription is raised by motion for summary judgment, review is *de novo,* using the same criteria used by the district court in determining whether summary judgment is appropriate." *Hogg v. Chevron USA, Inc.*, 09-2632, p. 6 (La. 7/6/10), 45 So.3d 991, 997 (footnote omitted)(citations omitted). In *Crooks v. Dep't of Nat. Res.*, 19-0160, 2020 WL 499233, at *8 (La. 1/29/20)(*opinion corrected on reh'g on other grounds* (Apr. 9,

---

[33] See procedural history on the exception of prescription and prescription urged in Defendants' motions for summary judgment discussed *supra*.

2020)), the Supreme Court held that, when a dispute is between a plaintiff and the state, and the state is the "taker" of the land, a plaintiff's claim for compensation is governed by the three-year prescriptive period set forth in La. R.S. 13:5111. The *Crooks* court noted that "[p]ursuant to La. R.S. 13:5111, prescription begins to run when the claimant is aware of those facts which give rise to a cause of action." *Id.* (citation omitted).

In the present case, this Court determined that La. R.S. 38:225, as amended in 2015, was not a taking on its face as a matter of law, and there are genuine issues of material fact remaining as to whether there was taking or inverse condemnation of Plaintiffs' properties by application of La. R.S. 38:225, as amended in 2015. Thus, genuine issues of material fact remain as to the prescription issue. We find no error in the district court's judgment, denying Defendants' prescription claim.

### DID THE DISTRICT COURT ERR IN FAILING TO DISMISS SLO AS A DEFENDANT?

On appeal, SLO asserts it is not a proper party, because it was "uninvolved in and unaware of the 2011 and 2015 amendments." SLO raised this claim in its opposition to Plaintiffs' motion for partial summary judgment.[34] At the hearing on the motion, counsel for SLO stated, "even if you find on the face of 38[:]225 is a taking[,] that's a claim against the legislature." At the conclusion of SLO's argument, the district court stated it was not dismissing any of the defendants, and in the June 18, 2020 judgment, wrote that it was not deciding at that time if there

---

[34] Louisiana Code of Civil Procedure article 966(F) provides in part that "[a] summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." The 2015 Comments to Article 966 state that "Paragraph F makes clear that, in deciding a motion for summary judgment, a court can consider only the issues raised in the motion or opposition filed by the parties," and "[t]he court cannot rule on issues not raised by the parties."

was a taking by Defendants. As the district court has not resolved this issue, we find it is not properly before this Court for review. Accordingly, this issue was not considered.

## CONCLUSION

The district court's judgment, granting Plaintiffs' motion for partial summary judgment is reversed, and the matter is remanded to the district court for further proceedings consistent with this opinion. As to the district court's denial of Defendants' prescription claims, we affirm the district court's judgment. Furthermore, SLO's request to be dismissed as a defendant is not properly before this Court; thus, it was not considered.

**REVERSED IN PART;**
**AFFIRMED IN PART;**
**REMANDED**